IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:17-CV-149-RJ

AVONDA KING,

        Plaintiff/Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, DE-21] pursuant to Fed. R. Civ. P. 12(c). Claimant Avonda King ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on April 17, 2014, alleging disability beginning April 17, 2014. (R. 184–99). Her claims were denied initially and upon reconsideration. (R. 50–88, 113–30). A hearing before the Administrative Law Judge ("ALJ") was held on August 17, 2016, at which Claimant, represented by counsel,

and a vocational expert ("VE") appeared and testified. (R. 19–49). On November 8, 2016, the ALJ issued a decision denying Claimant's request for benefits. (R. 89–102). The Appeals Council denied Claimant's request for review on June 2, 2017. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by improperly weighing the opinion evidence, failing to properly consider Claimant's pain, and failing to resolve a conflict with the VE's testimony and the DOT. Pl.'s Mem. [DE-20] at 1, 18–20.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 94). Next, the ALJ determined Claimant had the following severe impairments: mild osteoarthritis bilaterally in the knees and the right ankle; mild degenerative changes in the right hand with arthropathy; and minimal lumbar scoliosis. (R. 94–95). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 95). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding she had the ability to perform medium work[1] with the following limitations: [T]he claimant can frequently climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, or crawl. She can perform frequent manipulation with her dominant right hand. The claimant must avoid concentrated exposure to hazardous machinery and unprotected heights. (R. 95–99). At step four, the ALJ concluded Claimant did have the RFC to perform the requirements of her past relevant work as a cashier and coffee maker. (R. 100). Additionally, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 100–01).

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

## V. DISCUSSION

### A. RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1. Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig,* 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and

6

(5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[2] An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### i. Dr. Kell's Opinion

Claimant contends the ALJ erred by affording "little weight" to the opinion of Robert Kell, M.D., Claimant's treating primary care physician. Claimant contends the ALJ's treatment of Dr. Kell's medical opinion is insufficient where he failed to analyze the following factors contained in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2): (1) the length and treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability in the form of the quality of the explanation provided; (4) the consistency of the medical opinion with the record as a whole; and (5) whether the source is a specialist and offering a medical opinion relating to his or her area of specialty. Pl.'s Mem. [DE-20] at 9–14. Additionally, Claimant contends the ALJ failed to provide proper reasons to discount the treating physician's opinion, pursuant to *Radford*. *Id.* at 13–14 (citing *Radford v.*

---

[2] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

7

*Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.")). The Commissioner contends, based on the evidence cited by the ALJ in the RFC discussion regarding Claimant's visits with Dr. Kell, that substantial evidence supports the decision to assign "little weight" to Dr. Kell's opinion, particularly where the opinion was largely based on Claimant's subjective reporting. Def.'s Mem. [DE-22] at 5–10 (citing *Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *14 (E.D.N.C. Sept. 11, 2014) (noting that the ALJ properly assigned little weight to a medical opinion, "because it was largely reliant on Claimant's subjective complaints")).

The ALJ stated the following in assessing Dr. Kell's opinion:

Dr. Kell first opined the claimant could not walk a city block. She could sit 60 minutes at one time for a total of 3 hours and stand or walk for 15 minutes at one time for a total of 2 hours in an 8-hour workday with unscheduled breaks daily for 10–15 minutes (20F/2). She could lift and carry less than 10 pounds frequently and up to 20 pounds occasionally. She would be absent from work once or twice a month. She is not physically capable of working an 8-hour day, 5 days a week employment on a sustained basis (20F/3). Dr. Kell then opined the claimant could walk half a city block. She could sit 60 minutes at a time for 8 hours and stand or walk 30 minutes at a time during an 8-hour workday. She would need breaks every 30 minutes for 10–15 minutes at a time (5F/2). She could lift and carry 10 pounds or less occasionally. She could grasp, perform fine manipulation, and reach with her right hand for 10 percent of an 8-hour workday. She would be absent from work more than four times a month. She is not physically capable of working an 8-hour day, 5 days a week employment on a sustained basis (5F/3). Dr. Kell finally opined the claimant could not sit, stand, or walk in an 8-hour workday. She would need unscheduled breaks daily for 10–15 minutes. She could lift and carry less than 10 pounds occasionally. She could use her right ha[n]d only 75 percent of the time during an 8-hour workday for grasping, fine manipulation, and reaching (17F/2). She would be absent from work more than four times a month (17F/3). I give little weight to the opinion[s] of Dr. Kell, as they are inconsistent with his objective findings of mild symptoms.

(R. 99). Prior to this assessment, the ALJ discussed treatment records from Dr. Kell that span March 2014–July 2016. (R. 96–98). In March 2014, Claimant presented to Dr. Kell "asking

8

about disability for her knees and legs." (R. 96). Dr. Kell's examination revealed 90 degrees of flexion without pain and 0 degrees of extension without pain, full range of motion in her ankles and no pain. *Id.* Dr. Kell noted that, while Claimant reported taking Tramadol, she listed her pain as 10/10 which "Dr. Kell doubted Tramadol would be effective [in] treating." *Id.* Dr. Kell diagnosed Claimant with degenerative joint disease in the bilateral knees and ankles. *Id.* The ALJ noted Claimant "continued specifically to ask about disability in April 2014." *Id.* An x-ray was taken in July 2014 of Claimant's right ankle, which showed mild soft tissue swelling, without evidence of acute fracture or subluxation and degenerative changes in the tibiotalar joint greatest medially. *Id.* Claimant returned to Dr. Kell in December 2014 "in order to complete paperwork for her disability claim." *Id.* Dr. Kell noted normal function of her shoulder, her right elbow was painful with movement, her spine was normal, and her right knee and ankle were painful with movement with some tenderness. *Id.* In October 2015, Claimant returned to Dr. Kell, who wrote a prescription for Voltaren gel, and ordered blood work. (R. 97). At a follow-up visit, Claimant reported that her joints bother her periodically and she had some shoulder pain that was resolved when her medication was switched. *Id.* In June 2015, Claimant underwent x-rays of both hands, which showed mild osteopenia with minimal osteophyte formation from the posterior aspect of the third distal phalanx and loss of the normal musculature of the right hand, and osteopenia with mild degenerative changes in the first and fourth DIP joints with mild osteophyte formation and loss of the normal musculature of the hand. *Id.* X-rays in December 2015 showed Claimant had minimal mid-lumbar scoliosis, and Dr. Kell noted in January 2016 that Claimant was doing fairly well on her medication. *Id.* X-rays in February 2016 of Claimant's right hand showed moderate osteoporosis, and an MRI of Claimant's right hand in May 2016 revealed no osseous or soft tissue edema was evident in the second digit and no

9

foreign body or mass was apparent to correspond with the site of Claimant's pain. (R. 97–98). Lastly, Claimant presented to Dr. Kell in July 2016 "to fill out disability paperwork again as was done in 2014," and she complained of decreased strength in her right hand, 25% weaker than the left. (R. 98) (citing R. 512).

The court finds that substantial evidence supports the ALJ's decision to afford "little weight" to Dr. Kell's opinion. The ALJ thoroughly discussed Dr. Kell's treatment notes, noting consistently mild or moderate findings regarding Claimant's ankle, knee, and shoulder, and then concluded that Dr. Kell's opinions were inconsistent with his mild findings. It is apparent from the decision what evidence the ALJ believed conflicted with Dr. Kell's opinion, distinguishing this case from *Lewis*, where the Fourth Circuit found error in the ALJ's failure to explain the weight afforded to a treating physician's opinion because the decision left "impermissible gaps" when describing the opinions of the treating physician and the claimant's overarching medical history. *Lewis v. Berryhill*, 858 F.3d 858, 867–68 (4th Cir. 2017); *see also Dunn v. Colvin*, 607 Fed. App'x 264, 276 (4th Cir. 2015) ("[T]he fact that the ALJ could have offered a more thorough explanation for his decision does not change our conclusion that substantial evidence in the record supports that decision."). Further, contrary to Claimant's position that the ALJ failed to consider the factors listed in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) in weighing the treating physician's opinion, it is clear from the ALJ's discussion of the medical evidence that these factors were considered. Specifically, the ALJ noted that Dr. Kell was Claimant's primary care physician, he discussed the medical records which demonstrated the length, treatment relationship, and frequency of examination, and cited Dr. Kell's consistently mild or moderate findings, concluding that these findings were inconsistent with the restrictive limitations contained in Dr. Kell's opinions. Accordingly, the ALJ's evaluation of this opinion provides no

10

basis for remand.

### ii. Dr. Scully's Opinion

Claimant makes parallel arguments with respect to the ALJ's decision to afford "little weight" to Dr. Scully's medical opinion. The ALJ stated the following in assessing Dr. Scully's opinion:

> Dr. Scully opined the claimant could walk half a city block. She could sit 60 minutes at one time for 8 hours and stand or walk 30 minutes at one time for 1 hour in an 8-hour workday. She would need unscheduled breaks every 2 hours for 15 minutes at a time (7F/2). She could frequently lift and carry less than 10 pounds and occasionally lift and carry 10 pounds. She would be absent from work once or twice a month. She is not physically capable of working an 8-hour day, 5 days a week employment on a sustained basis (7F/3). I give little weight to the opinion of Dr. Scully, as [it is] inconsistent with his findings and the medical evidence of record.

(R. 99). Prior to this assessment, the ALJ discussed treatment records from Dr. Scully, as well as from Allison Devechio, FNP, both of whom work at the Eastern Carolina Orthopaedic Clinic. (R. 96–97). In December 2013, Claimant presented to Ms. Devechio, where she reported bilateral knee pain for the past 11 months and 5/5 pain, but stated that her knees were not hurting at the time of the visit. (R. 96). She stated the pain was aggravated with movement, weight bearing, and standing, and taking Tramadol helped her pain. *Id.* Upon examination, Claimant's knees and legs appeared normal with full range of motion and no pain with movement, and x-rays showed mild degenerative changes. *Id.* Claimant returned to Ms. Devechio complaining of knee pain, and she was found to have mild effusion in her knees with tenderness and full range of motion. *Id.* She was continued on Mobic and conservative treatment options were discussed, wherein Claimant chose home exercise therapy. *Id.* Claimant presented to Dr. Scully in January 2015 "to discuss her paperwork." (R. 97). She complained that her lower extremity pain would worsen after sitting and the pain limited her ability to ambulate. *Id.* Dr. Scully noted "no clear

11

antalgic component to her gait," and Claimant received injections in her knees at that time. *Id.* Claimant returned to Dr. Scully in February 2015 reporting the relief from the injections lasted one week, and an MRI was ordered. *Id.* The MRI revealed a degenerative tear of the posterior horn of the medial meniscus of the right knee, which Claimant chose to treat conservatively. *Id.*

The court finds substantial evidence supports the ALJ's decision to afford "little weight" to Dr. Scully's opinion. Dr. Scully's notes consistently showed mild findings, with the exception of a degenerative tear of Claimant's posterior horn of medial meniscus of the right knee, which Claimant chose to treat conservatively. As the court found with respect to Dr. Kell's opinion, it is apparent from the decision what evidence the ALJ believed conflicted with Dr. Scully's opinion, distinguishing this case from *Lewis*. 858 F.3d at 867–68; *see also Dunn*, 607 Fed. App'x at 276. Further, the ALJ's decision makes clear that he considered the factors listed in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) in weighing the treating physician's opinion. Specifically, the ALJ discussed Dr. Scully's medical records which demonstrated the length, treatment relationship, and frequency of examination, and cited Dr. Scully's consistently mild or moderate findings, concluding that these findings were inconsistent with the restrictive limitations contained in his opinion. Accordingly, the ALJ's evaluation of this opinion provides no basis for remand.

### 2. Evaluation of Claimant's Subjective Symptoms

When assessing the RFC, an ALJ must consider a claimant's subjective symptoms, including pain. 20 C.F.R. §§ 404.1529(a), 416.929(a); S.S.R. 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (effective Mar. 28, 2016). Federal regulations 20 C.F.R. §§ 404.1529 and 416.929 provide the "authoritative standard" for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other

12

symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. *Id.* at 594 (citing 20 C.F.R. §§ 404.1529(b), 416.929(b)). If the ALJ makes an affirmative finding at the first step, at the second step the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). The ALJ must consider "not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (internal citations omitted) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). While objective medical evidence must be considered in evaluating pain and other subjective symptoms, "because pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected 'solely because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of her pain." *Craig*, 76 F.3d at 595 (quoting 20 C.F.R. §§ 404.1529(c), 416.929(c)).

Claimant contends the ALJ failed to provide legally sufficient reasons based on substantial evidence to reject Claimant's symptoms. Pl.'s Mem. [DE-20] at 14–17. Specifically, Claimant argues that she has documented history of pain in her knees, ankle, right hand, and shoulder, and the ALJ discounted her symptoms based on his opinion that she was seeking treatment solely to support her disability claim. *Id.* The ALJ's decision summarized Claimant's subjective complaints of pain and her testimony regarding how that pain affects her daily life.

13

(R. 96). The ALJ proceeded to discuss the objective medical evidence, and then concluded by stating the following with respect to Claimant's pain:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> In terms of the claimant's alleged impairments, the evidence generally does not support the alleged loss of functioning.
>
> The claimant testified that she has pain in her feet and ankles. She testified when she sits for a long time her knees get stiff and it is difficult for her to get up. If she stands to[o] long she has pain as well. At other times, she will wake with pain and stay in bed until it subsides. However, diagnostic imaging only showed the claimant had mild degenerative changes in her knees. She continued to have full range of motion in her knees. Moreover, her pain was treated conservatively with medication and injections. Although, she would claim she was suffering from the most excruciating pain, which was inconsistent with her examination findings. Later, an MRI revealed a degenerative tear of her meniscus of the right knee, which the claimant chose to treat conservatively (16F/13; 22F/5). Furthermore, the claimant first inquired about disability with her provider on the same day as the alleged onset date. This suggests that the claimant attempted to create the conditions leading to the conclusion she was disabled as opposed to the medical evidence leading to it in its normal course. Therefore, I find the claimant's foot and ankle pain was inconsistent with the medical evidence of record. She exaggerated her symptoms, as only conservative treatment was necessary.
>
> The claimant testified to having pain in the elbow of her right arm. She testified there is arthritis in her right hand, which is painful and makes it difficult to grab objects and open things. However, X-rays of the right elbow appeared normal. An MRI of the claimant's right hand in May 2016 revealed no osseous or soft tissue edema was evident in the second digit and no foreign body or mass was apparent to correspond with the site of the claimant's pain (21F/2). Moreover, it appears th[at] since the claimant did not have more than mild symptoms in her lower extremities she attempted to find an additional impairment to claim disability. There appears to be no medical explanation for the pain in her right elbow. Therefore, I find that the claimant's characterization of her right elbow pain was exaggerated and inconsistent with the medical evidence of record.

(R. 98).

Consistent with the regulations, the ALJ discussed Claimant's testimony, her medical

14

history, including objective medical evidence, medication therapy, and injection therapy, as well as other evidence such as opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); S.S.R. 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (effective Mar. 28, 2016). Contrary to Claimant's position that the ALJ erred by opining that Claimant was searching for medical opinions to support disability, the ALJ's reasons for discounting Claimant's testimony are clear, convincing, and supported by substantial evidence. Further, it is the province of the ALJ, not the court, to make determinations regarding a claimant's subjective symptoms. *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994). Accordingly, the court finds Claimant's argument is without merit.

## B. The VE's Testimony and the DOT

Claimant contends the ALJ erred by failing to resolve conflicts between the RFC and the handling, fingering, and feeling requirements of one of the jobs identified by the VE. Pl.'s Mem. [DE-20] at 18–20. The Commissioner argues any error here is harmless where the VE identified two alternative jobs at step four and three alternative jobs at step five, each of which exists in significant numbers. Def.'s Mem. [DE-22] at 23–24.

Pursuant to Ruling 00-4p, the ALJ must "inquire, on the record, . . . whether the vocational expert's testimony conflict[s] with the [DOT], and [the Ruling] also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [DOT]." *Pearson v. Colvin*, 810 F.3d 204, 207–08 (4th Cir. 2015) (internal quotation marks omitted) (citing S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). However, not "all possible conflicts must be identified and resolved," but rather only "apparent conflicts," i.e., "where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209. The ALJ must elicit from the VE "a reasonable explanation for the apparent conflict," S.S.R. 00-4p, at *4, and the ALJ has not fulfilled his duty to fully develop the record if it

15

"contains an unresolved conflict between the expert's testimony and the [DOT]" or if the ALJ "ignores an apparent conflict because the expert testified that no conflict existed." *Pearson*, 810 F.3d at 210. "An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." *Id.* at 209–10.

In the RFC, the ALJ limited Claimant to "frequent manipulation with her dominant right hand." The VE testified, and the ALJ adopted the testimony, that Claimant was capable of performing her prior work as a cashier. (R. 100). The *Selected Characteristics of Occupations*, a companion title to the *Dictionary of Occupational Titles*, indicates that the job of cashier (DOT # 211.462-014) requires constant handling and fingering. App. C, U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* 1993. Claimant contends this is an apparent conflict that the ALJ failed to resolve and therefore remand is required. Pl.'s Mem. [DE-20] at 18–20. However, the VE also identified two previous jobs, stocker (DOT # 299.367-014) and coffee maker (DOT # 317.684-010), at step four, as well as three additional jobs, dietary aid (DOT # 319.677-014),[3] order picker (DOT # 922.687-058), and cleaner (DOT # 381.687-018), at step five that Claimant was capable of performing and Claimant does not contest the ALJ's finding as to these jobs. (R. 100–101). Each of these additional five jobs requires only frequent handling and fingering, which is within the purview of the RFC. *See Hardy v. Astrue*, No. 5:10-CV-293-FL, 2011 WL 2899148, at *11 (E.D.N.C. June 27, 2011) (holding harmless error where the ALJ appropriately relied upon the VE's testimony to

---

[3] Both the VE and ALJ list dietary aid as DOT # 219.677-014, which is not a recognizable DOT code. The court assumes they are referring to food-service worker, hospital DOT # 319.677-014, and will analyze the decision based on this assumption.

identify certain jobs that Claimant could perform irrespective of the VE's testimony regarding another job that conflicted with the DOT) (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error")), *adopted by* 2011 WL 2881544 (E.D.N.C. July 18, 2011). As the VE identified five additional jobs existing in significant numbers that Claimant can perform, the VE's testimony thus provided substantial evidence for the ALJ's decision that Claimant can perform alternate work. *See Hicks v. Califano*, 600 F.2d 1048, 1051, n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying step five under the sequential evaluation analysis). Therefore, the testimony of the VE regarding the jobs of stocker, coffee maker, dietary aid, order picker, and cleaner constitutes substantial evidence to support the ALJ's finding that a significant number of jobs exist in the regional economy which Claimant can perform. *See Prunty v. Barnhart*, No. 6:04-CV-38, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step 5 burden); *see also* S.S.R. 00-4p, 2000 WL 1898704, at *2 (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs"). Accordingly, the court finds the ALJ's determinations at step four and five are supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-19] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] is ALLOWED, and the final decision of the Commissioner is upheld.

SO ORDERED, this the 1st day of August 2018.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Robert B. Jones, Jr.
　　　　　　　　　　　　　　　　　United States Magistrate Judge